1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDRE M., | Case No.  CV 19-07237-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff Andre M.[1] ("Plaintiff") challenges the Commissioner's denial of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

/// 

/// 

---

[1]  Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II.    PROCEEDINGS BELOW

On February 11, 2016, Plaintiff filed a Title XVI application for SSI.  (AR 172-77.)  His application was denied initially on May 24, 2016 (AR 50-62), and upon reconsideration on July 27, 2016 (AR 63-74).  Plaintiff filed a request for hearing (AR 92-94), and a hearing was held on June 21, 2018 (AR 28-49).  Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert.  (AR 28-49.)  On July 17, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act, since February 11, 2016, the date the application was filed.  (AR 16-23.)  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (AR 2-7.)  Plaintiff filed this action on August 20, 2019.  (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 11, 2016, the application date.  (AR 18.)  At **step two**, the ALJ found that Plaintiff had the severe impairments of bilateral degenerative joint disease of the knees (worse on left), bilateral carpal tunnel syndrome (worse on right), and degenerative disc disease.  (*Id.*)  At **step three**, the ALJ found that Plaintiff "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (*Id.*)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work . . . except limited to occasional hand and foot controls; no climbing ladders, other postural activities limited to occasional; [and] must avoid concentrated exposure to extreme cold, unprotected heights and hazards.

2

1  (AR 19.)

2      At **step four**, based on Plaintiff's RFC and the vocational expert ("VE")'s

3  testimony, the ALJ found that Plaintiff was unable to perform past relevant work as

4  actually or generally performed.  (AR 22.)  At **step five**, the ALJ found that there

5  were jobs that existed in significant numbers in the national economy that Plaintiff

6  could perform.  (AR 22-23.)

7  **III.    STANDARD OF REVIEW**

8      Under 42 U.S.C. § 405(g), a district court may review the Commissioner's

9  decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are

10 supported by substantial evidence, and if the proper legal standards were applied.

11 *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "Substantial evidence .

12 . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such

13 relevant evidence as a reasonable mind might accept as adequate to support a

14 conclusion.'"  *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d

15 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

16 An ALJ can satisfy the substantial evidence requirement "by setting out a detailed

17 and thorough summary of the facts and conflicting clinical evidence, stating his

18 interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725

19 (9th Cir. 1998) (citation omitted).

20     "[T]he Commissioner's decision cannot be affirmed simply by isolating a

21 specific quantum of supporting evidence.  Rather, a court must consider the record

22 as a whole, weighing both evidence that supports and evidence that detracts from the

23 Secretary's conclusion."  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001)

24 (citations and internal quotations omitted).  "'Where evidence is susceptible to more

25 than one rational interpretation,' the ALJ's decision should be upheld."  *Ryan v.

26 Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*,

27 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Social Sec. Admin.,* 466 F.3d

28 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing

the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.   DISCUSSION

Plaintiff's sole contention is that the ALJ erred in assessing the RFC regarding his standing and walking limitations.   (Joint Stipulation ("JS") at 4-13, 21-22.) Specifically, Plaintiff argues that the record as a whole demonstrates that he is capable of no more than two hours of standing and walking per workday, which would limit him to sedentary work and warrant a conclusion of disability under Medical Vocational Guideline Rule 201.10.   (JS at 5.)   The Commissioner argues that the ALJ properly evaluated the record evidence and found Plaintiff capable of the full range of standing and walking for light work, *i.e*., six hours.   (*Id.* at 13-20.) For the reasons below, the Court affirms.

### A.   Applicable Legal Standards

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence."   20 C.F.R. § 416.945(a)(3); s*ee Robbins*, 466 F.3d at 883 (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)).   In doing so, the ALJ may consider any statements provided by acceptable medical sources, including statements that are not based on formal medical examinations.   *See* 20 C.F.R. § 416.927.[2]   An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by

---

[2]  For all claims filed on or after March 27, 2017, 20 C.F.R. § 416.920c applies, not § 416.927.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 416.920c.  The claim here, however, was filed before March 27, 2017.  Thus, the Court analyzes Plaintiff's claim pursuant to the treating source rule set forth in § 416.927.

4

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Courts give varying degrees of deference to medical opinions based on the provider:  (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat.  *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also* 20 C.F.R. § 416.927.  Most often, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).  Generally, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician.  *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject a treating or examining physician's uncontradicted opinion.  *Trevizo*, 871 F.3d at 675; *Lester*, 81 F.3d at 830-31.  When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).  Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," such an opinion may serve as substantial evidence when it is consistent with and supported by other independent

evidence in the record. *Lester*, 81 F.3d at 830-31; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (finding ALJ properly relied on non-examining state agency physician's assessment in determining the claimant's RFC and in rejecting the treating doctor's opinion regarding the claimant's functional limitations).

### B.   <u>The ALJ's Decision</u>

In determining the RFC, the ALJ gave the most weight to the opinions of the non-examining state agency medical consultants.  (AR 20-21.)  On initial review, M. Amado, M.D., opined that Plaintiff could perform a range of light work, including standing and/or walking about six hours in an eight-hour workday.  (AR 58.)  Dr. Amado found that a light RFC "correlates with [the consultative examiner Vincente R. Bernabe, D.O.'s] physical exam," including Plaintiff's ability to ambulate without an assistive device.  (AR 56.)

On reconsideration, F. Wilson, M.D., after reviewing updated treatment records, adopted Dr. Amado's initial assessment of a light RFC.  (AR 67.)

The ALJ gave "greater weight" to Dr. Amado's opinion than Dr. Bernabe's opinion and the "greatest weight" to Dr. Wilson's opinion, finding their opinions consistent with Dr. Bernabe's examination findings and other objective evidence in the record.  (AR 20-21.)  He also noted that Dr. Bernabe's examination was only two months after Plaintiff's left knee surgery.  (*Id.*)

The ALJ gave "substantial weight" to Dr. Bernabe's functional assessment, although he rejected Dr. Bernabe's standing/walking limitation.  (AR 21.)  Dr. Bernabe examined Plaintiff in May 2016, shortly after Plaintiff's left knee arthroscopic surgery.  (AR 20, 319.)  Dr. Bernabe observed that Plaintiff could get on and off the examining table without difficulty, could ambulate independently without difficulty and without limp, could walk on heels and toes, and could squat and recover to the standing position without help or support.  (AR 20, 320.)  Dr. Bernabe noted the left knee to be very swollen, with significant joint effusion and

positive McMurray, and flexion of the left knee below normal. (AR 20, 323-24.) He also noted positive McMurray on the right, but normal range of motion and no neurological deficit. (AR 20, 323.) Diagnostic studies of the left and right knees showed mild narrowing of the medial compartment of both knees, but were otherwise unremarkable. (AR 325.) Dr. Bernabe assessed that Plaintiff could perform a range of work between light and sedentary exertion, including standing and walking for two hours per day. (AR 326.) He further opined that an assistive device was not medically necessary. (AR 326.) The ALJ rejected the standing/walking limitation, finding it not supported by the examination notes in the treatment records. (AR 21.)

The ALJ gave "minimal weight" to Jalil Rashti, M.D.'s treating opinion from February 2018, which limited Plaintiff to less than sedentary work, including a limitation to standing/walking less than two hours out of an eight-hour workday. (AR 22, 359-61.) The ALJ found the opinion inconsistent with the cumulative evidence, including evidence of "adequate or normal strength in the lower extremities, normal or essentially normal neurological findings, lack of need for an assistive device, and only mild/moderate degenerative changes in the spine." (AR 22.)

### C.   Analysis

Plaintiff contends that the state agency opinions do not constitute substantial evidence because neither Dr. Amado nor Dr. Wilson provided an explanation as to why Plaintiff could stand/walk for up to six hours per workday. (JS at 11.) The Court disagrees. Dr. Amado explained that a light RFC was supported by Dr. Bernabe's physical examination and finding that Plaintiff could ambulate without an assistive device, which was adopted by Dr. Wilson. (AR 56, 66.) Although Dr. Amado did not explicitly state that Dr. Bernabe's standing and walking limitation was rejected because it was unsupported by the examination findings, it is implied. The Court rejects Plaintiff's argument that "Dr. Amado was merely summarizing what was in Dr. Bernabe's report." (JS at 21.) Dr. Amado's explanation for the light RFC was adequate.

Plaintiff also contends that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Bernabe's two-hour standing and walking limitation. (JS at 12.) As discussed above, the ALJ rejected Dr. Bernabe's standing/walking limitation because it was not supported by Dr. Bernabe's own examination findings or other objective findings. (AR 21.) Dr. Bernabe found that Plaintiff was able to ambulate independently without difficulty, even though his left knee was still very swollen and McMurray tests were positive on both knees. (AR 20, 320, 323.) The ALJ properly rejected Dr. Bernabe's standing/walking limitation on this basis. *See Matney on Behalf of Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (an ALJ need not accept an opinion that is unsupported by clinical findings). As discussed below, the ALJ also cited other objective evidence in the record that supported his conclusion that Plaintiff could stand and walk six hours per workday. The ALJ gave specific and legitimate reasons for rejecting Dr. Bernabe's stand/walk limitation.

The ALJ cited objective findings in the record in support of his determination that Plaintiff could stand and walk for six hours.[3] (AR 20-21.) He found that the evidence of record did not establish the need for a cane or assistive device for a 12-month period, given Dr. Rashti's limited findings, the lack of any neurological deficit, and Dr. Bernabe's examination in May 2016. (AR 20, 320-25, 375-76.) He noted that although Plaintiff was placed off work commencing 2014 to the present, the medical record primarily reflects Plaintiff's complaints of left knee, neck, and back pain, with limited left knee flexion, tenderness in cervical and lumbar spine,

---

[3] As the Commissioner points out, although Plaintiff focuses on evidence regarding his knee impairments, the ALJ also evaluated medical evidence regarding Plaintiff's other alleged impairments, including those that could affect his ability to stand and walk. (JS at 15 n.5.) For example, the ALJ noted that Plaintiff had normal range of motion in the lumbar spine, normal neurological findings and straight leg raising tests, and unremarkable imaging of the lumbar spine in May 2017. (AR 21, 325, 600-03.) The ALJ considered the combination of Plaintiff's impairments in rejecting Dr. Rashti's assessment limiting Plaintiff to standing and walking less than two hours. (AR 22.)

positive straight leg raising, antalgic gait, and reported need for a cane noted on examinations. (AR 20, 334-45, 375-77, 381-82, 386, 391, 399-400, 409-11, 413-14, 421-22, 430, 450, 454, 458, 461-62, 481-82, 562, 597.) The ALJ also noted that in January 2017, Dr. Rashti found tenderness, positive patellar test and 1+ swelling in the left knee, but no effusion or instability, and fairly normal strength. (AR 20, 618). In June 2017, a chiropractor found left knee swelling, with range of motion similar to that reported by Dr. Bernabe about one year earlier. (AR 20-21, 748-50.) A September 2017 MRI/arthrogram showed severe joint effusion. (AR 21, 577.) The ALJ acknowledged that Plaintiff may benefit from left knee replacement surgery, but found that Plaintiff nevertheless had adequate strength, no instability, and maintained fairly good range of motion, with "far less significant deficits in the right knee." (AR 21.) The ALJ concluded that the RFC, including the limits on using foot controls, adequately addressed Plaintiff's limitations resulting from his knees, especially given that Plaintiff had no other severe lower extremity impairments. (*Id.*)

Despite Plaintiff's arguments to the contrary, the Court finds that the ALJ rationally interpreted the objective evidence. The record shows, for example, twelve days after Plaintiff's left knee arthroscopy in March 2016, Dr. Rashti found no swelling, erythema, effusion, or localized heat. (AR 521.) Therapy was recommended. (*Id.*) In Dr. Rashti's October 2016 progress report for Plaintiff's workers' compensation case, the objective findings and treatment plan related to Plaintiff's cervical spine and right wrist. (AR 733.) In November 2016, Dr. Rashti noted hand swelling and weakness, tenderness along the left patella region, and a wide stance gait, but treatment was a referral for a hand specialist. (AR 734.) In December 2016, Plaintiff did not complain about knee pain and Dr. Rashti did not record objective findings relating to Plaintiff's knees. (AR 734.) In January 2017, Plaintiff had a slow gait with a slight limp favoring the left lower extremity. (AR 618, 735.) As the ALJ noted, on examination of the left knee, there was 1+ swelling noted, no effusion, well-healed portals, joint line tenderness, positive compression

test, no instability, and fairly normal strength.  (AR 20, 618, 735.)  The treatment plan related to Plaintiff's hands, cervical spine and lumbar spine.  (AR 618, 735.)  In February 2017, Plaintiff complained about knee pain, but Dr. Rashti did not make objective findings regarding Plaintiff's knees.  (*Id.*)  In June 2017, a chiropractor in Plaintiff's workers' compensation case found notable swelling in the left medial and lateral joint lines of the left knee; symmetrical valgus alignment at the knees; tenderness along the patellar region, infrapatellar region, medial and lateral joint line, and popliteal fossa bilaterally; no signs of patellar crepitus on the left; and grade 3 swelling in the medial and lateral joint lines on the left.  (AR 748-49.)  In August 2017, Dr. Rashti found difficulty standing from a seated position, limp favoring the left leg with a cane, swelling, and tenderness.  (AR 584.)  A September 2017 MRI of the left knee indicated a radial tear of the posterior horn of the medial meniscus with extrusion, thickening consistent with sprain, chondral abnormalities, and severe joint effusion.  (AR 651.)  In March 2018, Dr. Rashti found left knee weakness and antalgic gait, and he referred Plaintiff to a specialist for a left knee evaluation.  (AR 634-35.)  While Plaintiff may rationally interpret the record evidence differently, the Court must defer to the ALJ's conclusion.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004); *see also Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.") (citation and internal quotation marks omitted).

In sum, the Court finds that the ALJ's RFC assessment regarding Plaintiff's standing and walking limitations is supported by substantial evidence.  *See Arrieta v. Astrue*, 301 F. App'x 713, 715 (9th Cir. 2008) (finding that substantial evidence supported the RFC determination when the ALJ properly evaluated the opinion evidence and relied on supporting medical reports and testimony).

///

///

V.     **CONCLUSION**

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  August 3, 2020

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

11